OPINION
{¶ 1} This is an appeal from judgments of the court of common pleas that rejected a joint request to enjoin picketing in two residential neighborhoods in Mason, Ohio, and Loveland, Ohio. The picketing arises from a labor dispute in Richland County, Ohio. The court rejected the request of one co-plaintiff, Cynthia Hritz, on a finding that her avenue of relief was in and through the Richland County Common Pleas Court, which had granted injunctive relief encompassing the claims she makes. The court rejected the request of the other co-plaintiff, Lynne Tracey, on a summary judgment, the court having found the evidence she presented insufficient as a matter of law to warrant the relief requested. On review, we find no error or abuse of discretion, as alleged, and will therefore affirm the judgments of the court of common pleas.
 FACTS {¶ 2} Defendants-appellees, United Steelworkers of America, AFL-CIO, CLC ("USWA"), and Local 169 of that labor organization, are and have for some time been involved in a labor dispute in Mansfield, Ohio, in Richland County, with Armco, Inc., and now its successor, AK Steel Corporation ("AK Steel"). The dispute culminated in a lockout of USWA's members by AK Steel at its Mansfield facility. Litigation between those parties was commenced in the Richland County Common Pleas Court, and remains pending before that court, which has granted injunctive relief governing the manner and means of picketing by USWA, Local 169, and their members, undertaken by them to protest the lockout.
 {¶ 3} Plaintiff-appellant, Cynthia Hritz, is a resident of Mason, Ohio, in Warren County. Plaintiff-Appellant, Lynne Tracey, is a resident of Loveland, Ohio, in Hamilton County. They commenced this action jointly, seeking preliminary and permanent injunctive relief to restrain USWA, Local 169, and four of their individual members from engaging in picketing in their respective residential neighborhoods to protest the AK Steel/USWA labor dispute in Mansfield. The union and its members have undertaken to picket in those and in other locations where AK Steel executive officials reside. The picketers, who are called the "road crew," generally appear weekly and stay for several hours. Their purpose, according to one of the individual appellees, is to "put the heat on AK Steel every week . . ."
 {¶ 4} The pickets distribute leaflets to persons and homes in the neighborhoods that state the union's position in its dispute with AK Steel. They have at times carried signs that deride AK Steel employees as "liars, thieves, vultures," and label AK Steel "inhumane employer of the year." They also chant calls concerning AK Steel executives who live nearby. On one occasion, a picket appeared in a costume made up as a rat, wearing a placard identifying himself as "John Hritz," spouse of Cynthia Hritz, and an AK Steel executive. When the picketers encountered Hritz's nine-year-old daughter, they pointed to the rat and told her, "that's your dad."
 {¶ 5} Except for the fact that she is the wife of John Hritz, Hritz has no connection with AK Steel or its dispute with USWA and its members. Her co-plaintiff in this injunctive action, Lynne Tracey, has no connection at all with the dispute or the parties who are involved in it. She lives in the Loveland neighborhood next door to another AK Steel executive, Jim Wainscott, whose presence has also attracted pickets to that location. On one occasion, in February of 2002, a picket offered Tracey's fourteen-year-old daughter, Kristen, a flyer as she walked passed their group of three or four persons. When Kristen declined the flyer one of the men replied that they had a right to be there.
 {¶ 6} Hritz and Tracey requested injunctive relief preventing appellees from:
 {¶ 7} "1. Picketing, patrolling, congregating, loitering or assembling in any way on Heritage Club Drive in Warren County, Ohio, or on Farmstead Drive and Millstone Court in Hamilton County, Ohio, more than once each week, for any longer than thirty minutes on any one occasion, and at any time before 9 a.m. on any day, and between 2 p.m. to 5 p.m. on any weekday, and after sundown on any day.
 {¶ 8} "2. Approaching within 30 feet of, speaking to or shouting at any minor individual not accompanied by an adult at any time on Heritage Club Drive in Warren County, Ohio, or on Farmstead Drive and Millstone Court in Hamilton County, Ohio;
 {¶ 9} "3. Using any form of sound amplification equipment at any time on Heritage Club Drive in Warren County, Ohio, or Farmstead Drive and Millstone Court in Hamilton County, Ohio;
 {¶ 10} "4. Interfering, by mass picketing, assembly or otherwise, with the orderly flow of traffic, ingress to, or egress from residential property on Heritage Club Drive in Warren County, Ohio, or Farmstead Drive and Millstone Court in Hamilton County, Ohio;
 {¶ 11} "5. Entering onto the private residential property at the following addresses without invitation:
 6611 Heritage Club Drive Mason, Ohio 45040
 11980 Millstone Court Loveland, Ohio 45140
 {¶ 12} "6. Entering onto any private residential property on Heritage Club Drive in Warren County, Ohio, or Farmstead Drive and Millstone Court in Hamilton County, Ohio, after receiving notice, by telephone or in writing, that the residents of that property do not consent to such entry;
 {¶ 13} "7. Photographing or videotaping, or pretending to photograph or videotape, residents or invited guests on private residential property on Heritage Club Drive in Warren County, Ohio, or Farmstead Drive and Millstone Court in Hamilton County, Ohio.
 {¶ 14} "Plaintiffs further demand that Defendants provide notice of their intent to engage in picketing permitted under this Order and the location(s) and time(s) at which such picketing will take place to a person to be designated by Plaintiffs no later than 24 hours before such picketing is to occur."
 {¶ 15} The petition also asked the court to order appellees to give notice of its orders to their agents and others acting in concert with them, "and to direct all persons to conform to and obey any restrictions ordered by this Court and any notification received pursuant to this Order."
 {¶ 16} Hritz and Tracey filed their joint petition on March 14, 2002. Prior to that, on September 28, 1999, the court of common pleas of Richland County entered an injunctive order in its case involving the AK Steel/USWA labor dispute, containing the following prohibition to which those parties had agreed:
 {¶ 17} "Defendants [the USWA and Local 169 and their members] shall refrain from all acts and/or threats of violence and harassment toward Plaintiffs' salaried employees, including their families, and including without limitation at the residences of Plaintiff's salaried employees."
 {¶ 18} The trial court referred the petition to its magistrate for hearing and decision. On April 26, 2002, the magistrate entered a decision dismissing Hritz's request for injunctive relief, finding that her proper avenue of relief was in and through the AK Steel/USWA action in Richland County. On June 1, 2002, the magistrate entered a decision granting a motion for summary judgment that appellees filed with respect to Tracey's claims for relief, finding no genuine issue of material fact which would support the grounds for relief that the injunctive remedy requires.
 {¶ 19} Hritz and Tracey filed objections to the magistrate's decisions. The trial court overruled their objections and adopted the decision as its order. Hritz and Tracey filed a timely notice of appeal to this court.
 FIRST ASSIGNMENT OF ERROR {¶ 20} "The Court of Common Pleas erred in applying the jurisdictional priority rule to dismiss Mrs. Hritz's claims."
 {¶ 21} The trial court adopted its magistrate's decision applying the jurisdictional priority rule in deference to the Richland County action. That rule provides:
 {¶ 22} "As between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.
 {¶ 23} "When a court of competent jurisdiction acquires jurisdiction of the subject matter of an action, its authority continues until the matter is completely and finally disposed of, and no court of coordinate jurisdiction is at liberty to interfere with its proceedings."John Weenink Sons Co. v. Court of Common Pleas of Cuyahoga County
(1948), 150 Ohio St. 349, paragraphs two and three of the syllabus.
 {¶ 24} The purpose and function of the judicial priority rule is to prevent a defendant from being "harassed and oppressed by two actions for the same cause where plaintiff has a complete remedy by one of them."State ex rel. Maxwell v. Schneider (1921), 103 Ohio St. 492, 496. The rule has been applied to requests to enjoin picketing in labor disputes.State ex rel. Racing Guild of Ohio, Local 304, Service Employees Int'l.Union AFL-CIO, CLC v. Morgan (1985), 17 Ohio St.3d 54, 56.
 {¶ 25} Hritz argues that the trial court erred when it applied the judicial priority rule as it did, for two reasons.
 {¶ 26} Hritz first argues that the rule applies only to successive actions between the same parties, and she points out that she is not a party to the Richland County action. In his decision, the magistrate found that Hritz is in the position of a party to that action because she is a beneficiary of the relief the Richland County court granted. Hritz argues that the magistrate's third-party beneficiary analysis is misplaced.
 {¶ 27} The magistrate reasoned that the Richland County injunction, because it was a form of consent decree to which the parties to the action had agreed, is in the nature of a contract whose prohibitions are for the benefit of Hritz and other family members of AK Steel salaried employees such as her husband. We agree with that analysis, but believe it does not fully overcome the procedural character of Hritz's argument.
 {¶ 28} Hritz is not a "party" to the Richland County action because she is neither a plaintiff nor a defendant in that proceeding, it is true. However, and unlike other actions, that fact does not prevent Hritz from prosecuting her claim for relief in that action.
 {¶ 29} The injunction the Richland County court issued prohibits appellees herein from committing "all acts and/or threats of violence and harassment toward (AK Steel's) salaried employees, including their families, and including without limitation at the residences of (AK Steel's) salaried employees." It is undisputed that Hritz's husband is such an employee.
 {¶ 30} Civ.R. 71 states:
 {¶ 31} "When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party."
 {¶ 32} The injunctive order the Richland County court issued runs in favor of a class of persons that includes Hritz. Therefore, per Civ.R. 71, she is in the position of a party with respect to its enforcement. Further, she may do that without formal intervention; instead, per R.C. 2727.12, she may seek enforcement of the order by the simple act of filing an affidavit with the Richland County court setting out the facts of the alleged harassment by the defendants in that action, who are appellees herein, and their privies. Therefore, the fact that Hritz is not a named party to the Richland County action does not prevent application of the judicial priority rule as it was applied here.
 {¶ 33} Hritz argues that Civ.R. 71 nevertheless ought not apply to her in this way because it cannot be used to enlarge substantive rights or impose liabilities that do not exist. Neither applies here. Appellees are parties to the Richland County action, and the injunctive relief granted in that action imposes a liability on them. Civ.R. 71 may be used to enforce injunctive relief. See Baldwin's Ohio Civil Practice, Section 71-1. R.C. 2721.12 creates a method by which Hritz may seek to do that. The arguments to the contrary she presents have no application to these facts, and if adopted would render Civ.R. 71 meaningless.
 {¶ 34} As a second ground for the error she assigns, Hritz argues that the judicial priority rule is not applicable because any relief the court might grant in the action she filed below would not affect or interfere with the Richland County action because the two actions involve different claims for relief. The Richland County action may very well involve other claims between AK Steel and USWA arising from their labor dispute, but it also prohibits, albeit in more general terms, the kinds of conduct that Hritz seeks to limit or prohibit in this action. Both involve injunctive relief in connection with picketing by the same persons arising out of the same labor dispute. Therefore, "[e]ach of these actions comprises part of the `whole issue' that is within the exclusive jurisdiction of the court whose power is legally first invoked." State exrel. Racing Guild v. Morgan, 17 Ohio St.3d at 56. Because both actions are within the same "whole issue" before the Richland County court, the conflict between them is inherent and presumed. Weenink. Hritz has not rebutted that presumption.
 {¶ 35} Hritz's assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 36} "The Court of Common Pleas erred in granting summary judgment against Ms. Tracey."
 {¶ 37} Tracey is not a person in whose favor the Richland County court's injunction runs. Therefore, she is not in the position of a party to the Richland County action by reason of Civ.R. 71. Not being a party or one who is in an equivalent position on her claim for injunctive relief, Tracey's claim for relief is not subject to the judicial priority rule. The magistrate so found. Instead, the magistrate and trial court entered summary judgment for appellees on the motion they filed pursuant to Civ.R. 56, denying Tracey the relief she requested.
 {¶ 38} Summary judgments are entered preliminarily, and generally absent an evidentiary hearing. They are, nevertheless, determinations of the merits of the claim or defense on which the judgment is granted, rendered on the basis of evidentiary materials presented in support of and against the motion.
 {¶ 39} Before summary judgment may be granted, it must be determined from the record before the court, including the pleadings and all the evidentiary materials presented that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment on the claim or defense as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Osborne v. Lyles (1992),63 Ohio St.3d 326. A genuine issue of material fact exists whenever the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. Aglinsky v. Cleveland Builders SupplyCo. (1990), 68 Ohio App.3d 180.
 {¶ 40} Summary judgments do not turn on findings of fact because, necessarily, the relevant facts are not genuinely in issue. Summary judgments are rulings of law, and because they are, summary judgments rendered by the trial courts are subject to de novo review on appeal.Nilavar v. Osborn (1998), 127 Ohio App.3d 1.
 {¶ 41} "The authorities are agreed that injunction is an extraordinary remedy equitable in nature, and that its issuance may not be demanded as a matter of strict right. An application for an injunction is addressed to the sound discretion of the court, Burnet v. Corporationof Cincinnati, (1827), 3 Ohio 73, 88, 17 Am.Dec. 582, 584, and its allowance is a matter of grace. Whether it will be granted depends largely on the character of the case, the peculiar facts involved and other pertinent factors, among which are those relating to public policy and convenience. If its allowance would be inequitable or unjust, it may be refused. And unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments." (Citations omitted.) Perkins v. Villageof Quaker City (1956), 165 Ohio St. 120, 125.
 {¶ 42} Equity does not create rights; it merely provides remedies for the protection and vindication of recognized rights that otherwise exist. Building Service Maintenance Union v. St. Luke's Hospital
(C.P. 1967), 11 Ohio Misc. 218. It applies where the law otherwise has failed to make provision for some right about to be violated. RicardBoiler Engine Co. v. Benner (1904), 14 Ohio Dec. 357. Injunctive relief is therefore a preventive remedy, designed to guard against future injury rather than to afford redress for wrongs already suffered. Fischerv. Damm (1930), 36 Ohio App. 515.
 {¶ 43} One seeking the protection of an injunction must, generally speaking, make not only a case of a right at law, but also one in equity which commends itself to the conscience of the court. Kellog v. Ely
(1864), 15 Ohio St. 64. "Therefore, to authorize interference by injunction the injury must be real, certain, substantial, serious, and direct." 56 Ohio Jurisprudence 3d (2003) 115, Injunctions, Section 18. In determining an application for injunction, regard must be had not only for the rights of the complainant which are sought to be protected, but also for the injuries which may result to others from the granting of the injunction. Richmond Heights v. Board of County Commrs. (1960),112 Ohio App. 272.
 {¶ 44} The power of a court to issue an injunction, resting as it does on sound principles of justice and equity, should not be impaired by too free an exercise thereof. Because it substitutes an exercise of the judicial power for the normal and regular processes of government, the injunctive power should be exercised cautiously and sparingly. Goodallv. Crofton (1877), 33 Ohio St. 271. Courts will not exercise the authority when the right is doubtful or the facts are not clearly ascertained. Spangler v. Cleveland (1885), 43 Ohio St. 526.
 {¶ 45} The magistrate correctly identified the right which Tracey asked the court to protect, which is her and her daughter's right to be free from an invasion of their privacy. The right, in this instance, centers on the home, in which they have a right of refuge from the tumult of public affairs. The right applies less strongly to a public street, including one in a residential district, which is a public forum. Frisbyv. Schultz (1988), 487 U.S. 474. "On a public way, the citizen must accept the inconvenience of political proselytizing as essential to the preservation of a republican form of government." City of Bowling Greenv. Lodico (1967), 11 Ohio St.2d 135, syllabus.
 {¶ 46} The matter toward which appellees' protests were directed was not political but private: their dissatisfaction with AK Steel's lockout of their members at its Mansfield facility. The right they exercised was, nevertheless, a political right, the right of free speech which is protected by the First Amendment. The magistrate acknowledged that the right may be subject to prior restraints with respect to the time, place, and manner of the speech involved, but only on a clear showing of need and in a way narrowly tailored to protect the right the injunctive relief would vindicate.
 {¶ 47} The magistrate's decision contains the following discussion of the facts of this matter relevant to these principles:
 {¶ 48} "We assume for purposes of the pending motion that Kristen Tracey's version of what happened the afternoon of February 20, 2002 is factually correct. Kristen was approached by a member of Local 169's road crew who attempted to give her a leaflet, and this occurred on a public sidewalk. Kristen refused it, saying `No thank you.' The demonstrator defended his right to be there to express his point of view. The demonstrators present, as well as the United Steelworkers of America and its Local 169, all concur that Kristen should not have been approached. Significantly, for two years prior, no incident involving the road crew occurred on Millstone Court and no evidence is in the record that any such incident has occurred since February 20, 2002.
 {¶ 49} "Notwithstanding the lack of any specific incident of misbehavior on the part of Defendants, Tracey seeks an order limiting the times when the road crew can picket, and imposing limits upon such picketing's duration and frequency, as well as a myriad of other injunctive requirements, including prior notice of picketing, all in an effort to curtail what is indisputably occurring upon a public sidewalk, and which does not implicate the Tracey family's right to privacy, the right upon which Plaintiff ostensibly relies.
 {¶ 50} "There is no allegation, let alone evidence, that any member of the Tracey family has been assaulted, threatened, or harassed. Plaintiff's family is not a `captive' audience; the Traceys are not the victims of `targeted picketing.' Nor does the evidence suggest that the road crew is creating a noise or traffic nuisance.
 {¶ 51} "Plaintiff argues that the state recognizes that minor children are entitled to protection from `offensive' speech, above and beyond that to which adults may be entitled. See St. David's EpiscopalChurch v. Westboro Baptist Church, Inc. (1996), 22 Kan. App. 2d 537,921 P.2d 821. While this is undoubtedly true, an allegation that AK Steel's chief financial officer `put people out into the street' is not `patently offensive' in the sense that George Carlin's `Filthy Words' monologue is. See St. David's, supra at 550, 921 P.2d 830-31, citing FCCv. Pacific Foundation (1978), 438 U.S. 726. Inasmuch as no reasonable person could construe the remarks attributed to a member of Local 169's road crew as obscene, profane, or even vulgar, and any further colloquy between the picketers and Kristen Tracey is unlikely to occur, this Magistrate declines Plaintiff's invitation to begin drawing lines with respect to Defendants' freedom of expression and the state's right to protect children from what Plaintiff perceives to be objectionable speech.
 {¶ 52} "Accordingly, the undersigned Magistrate concludes that, accepting Plaintiff's version of the facts as true, such facts are insufficient, as a matter of law, to sustain the relief requested." (Decision, pp. 13-14).
 {¶ 53} Tracey does not contend that the magistrate failed to consider a material fact before him. Tracey suggests that genuine issues nevertheless remain because those facts, when construed most strongly in Tracey's favor, as Civ.R. 56(C) requires, warrant injunctive relief. Tracey points out that her daughter, Kristen, testified that she feels inhibited from going from her home to the street while pickets are present. This, she argues, is the kind of captivity in the home from "focused protest" that the Frisby court held could be deserving of legal protection.
 {¶ 54} Frisby involved the constitutionality of a local ordinance prohibiting picketing in residential areas, not an application for injunctive relief. The rules governing injunctive relief create a different context for weighing the issues presented. Frisby also involved "focused picketing," that is, protests localized to a particular house in which, in that instance, an abortion provider resided. The protests here are not focused on Tracey's house. Their focus may be her neighbor, Wainscott, with respect to the actions of his employer, AK Steel, but neither are they so focused on his house that he or his family are as a result "captives" inside, which was the situation in Frisby. Indeed, apart from Tracey's statement concerning the inhibitions she feels, there is no evidence of the kind of evil that Frisby recognized as a basis to limit the exercise of First Amendment rights.
 {¶ 55} Appellants argue that these facts demonstrate a basis for injunctive relief, nevertheless, because of the need to protect children such as Kristen. It is true that the law affords children a higher measure of protection than adults. However, nothing in the record demonstrates a need for such protection. Being handed a leaflet and told that the speaker has a right to be present is not abusive. Indeed, as this happened but once, it is as grounds for relief a matter which is de minimus.
 {¶ 56} In this connection, and perhaps also with respect to the claims of Hritz, appellees argue that the issues this appeal presents are moot. They point out that the conduct of the union's "road crew" was in response to AK Steel's lockout of their members from AK Steel's Mansfield facility, which has now ended. Therefore, no further residential picketing to protect the lockout need be undertaken. Appellants argue that a need for injunctive relief nevertheless continues because the parties to the labor dispute remain at odds, no overall collective bargaining agreement having been reached. However, these are matters outside the appellate record, and we may not rely on them in our review of a trial court's decision that was based on a record of which these matters were not a part.
 {¶ 57} We find no error in the trial court's adoption of its magistrate's decision granting summary judgment to appellees on their motion. The second assignment of error is overruled.
 Conclusion {¶ 58} Having overruled the assignments of error presented, we will affirm the judgment from which this appeal was taken. Appellees' application to supplement the record with affidavits which were not a part of the record before the trial court is denied.
YOUNG, J., concurs.