[Cite as *State ex rel. Yost v. Hastings Dairy, L.L.C.*, 2025-Ohio-1900.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel. DAVE YOST, ATTORNEY GENERAL OF OHIO, | CASE NO. 2024-G-0052 |
| Plaintiff-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| HASTINGS DAIRY, LLC, et al., | Trial Court No. 2020 M 000026 |
| Defendants-Appellees. | |

## OPINION AND JUDGMENT ENTRY

Decided: May 27, 2025
Judgment: Affirmed

*Dave Yost*, Ohio Attorney General, and *Nora Baty*, *Elizabeth M. Vanness*, *Kelly Becker*, and *Morgan Trivunic*, Assistant Attorneys General, Environmental Enforcement Section, State Office Tower, 30 East Broad Street, 25th Floor, Columbus, OH 43215 (For Plaintiff-Appellant).

*Matthew T. Norman* and *Richard C.O. Rezie*, Gallagher Sharp, LLP, 1215 Superior Avenue, 7th Floor, Cleveland, OH 44114 (For Defendants-Appellees).

EUGENE A. LUCCI, J.

{¶1} Appellant, the State of Ohio ex rel. Dave Yost, appeals the judgment denying it certain injunctive relief and assessing a $30,000 penalty against appellees, Hastings Dairy, LLC, Lad Hastings, Hilltop Holdings, LLC, and Milk Maid, LLC (collectively "Hastings"), on the State's complaint for certain violations of R.C. Chapters 939 and 6111 and the rules promulgated thereunder. We affirm.

{¶2}    In May 2019, a large manure storage pit at Hastings' dairy farm in Geauga County breached, and significant amounts of manure overflowed into neighboring waters, including two ponds located on the property of nearby landowners ("the Murphy's ponds"). Thereafter, the Ohio Department of Agriculture ("ODA") and the Ohio Environmental Protection Agency ("OEPA") investigated the breach. During the investigation, ODA and OEPA officials discovered other alleged pollution sources at the facility.

{¶3}    Thereafter, the State filed a complaint, twice amended, alleging seven claims against Hastings, as follow: (1) failure to prevent the overflow and discharge of manure from the large manure storage pit into waters of the state in violation of Ohio Adm.Code 901:13-1-02; (2) failure to prevent the overflow and discharge of manure from the temporary manure storage pit into waters of the state in violation of Ohio Adm.Code 901:13-1-02; (3) failure to prevent the overflow and discharge of manure from the freestall barns into waters of the state in violation of Ohio Adm.Code 901:13-1-02; (4) failure to prevent the overflow and discharge of manure from the silage area in violation of Ohio Adm.Code 901:13-1-02; (5) improper composting of animal mortality in violation of Code 316 of the Field Office Technical Guide and Ohio Adm.Code 901:13-1-13; (6) illegal discharge of pollutants into waters of the state in violation of R.C. 6111.04, R.C. 6111.07(A), and Ohio Adm.Code 3745-33-02; and (7) creating a public nuisance by discharging sewage into waters of the state without a permit in violation of R.C. 6111.04(A)(2) and R.C. 6111.07(A).

{¶4}    During the course of the proceedings in the trial court, the parties entered into a consent order for a preliminary injunction ("the consent order"). As part of the consent order, Hastings were enjoined from violating R.C. Chapter 939 and the rules

promulgated thereunder. The consent order further required Hastings to: empty the large manure storage pit pursuant to a schedule, with complete emptying to occur by August 30, 2020; demolish the operator-constructed emergency levee or hire a licensed professional engineer to properly design and/or repair this levee to prevent seepage of manure by August 30, 2020; place a staff gauge or other permanent marker in the large manure storage pit by August 30, 2020, that would clearly indicate the maximum operating level of the manure storage pit as determined by the ODA; empty the temporary manure storage pit by March 20, 2020; refrain from adding manure to the temporary manure storage pit; allow the ODA to inspect the temporary manure storage pit to assess its permanent closure and abandonment by March 20, 2020; immediately maintain a minimum of one foot of free board at all times in the concrete manure storage structure; immediately ensure that the manure transfer pipe exiting the freestall barn and entering the concrete manure storage structure was properly functioning, repaired, and maintained; complete and submit a Comprehensive Nutrient Management Plan to the ODA by August 30, 2020; allow authorized representatives access to their animal feeding operation and property to verify compliance with the terms and conditions of the consent order; and immediately begin following the Natural Resources Conservation Service Field Office Technical Guide Code 590 standard ("NRCS Code 590") for the land application of animal manure.

{¶5}  On January 6, 2021, the State filed a motion for Hastings to show cause as to why they should not be held in contempt for failing to abide by terms of the consent order, including their failure to completely empty the large manure storage pit. Thereafter,

the trial court issued an order finding Hastings in contempt and issuing purge conditions including a new schedule for Hastings to meet for emptying the large manure storage pit.

{¶6} Thereafter, Hastings moved for an extension of the deadline to empty the large manure storage pit. In an order dated July 25, 2022, the trial court noted that, at the hearing on Hastings' motion, the parties entered into discussions to resolve the matter, and they filed status reports thereafter. Accordingly, the trial court denied Hastings' motion for an extension as moot and indicated that Hastings could refile their motion if the parties were unable to resolve the issues.

{¶7} On August 31, 2022, the State filed a second motion for Hastings to show cause as to why they should not be held in contempt for their failure to completely empty the large manure storage pit and their failure to install a staff gauge in the pit. In response, Hastings requested the court dissolve the requirement that they completely empty the pit.

{¶8} Following a hearing, the trial court issued an order finding Hastings in contempt, but ordering that, as an alternative to completely emptying the large manure storage pit, and as part of new purge conditions, Hastings could employ a qualified professional to conduct a study of the pit, no later than August 1, 2023, to determine its capacity and then install a measuring gauge in the pit.

{¶9} Thereafter, the State moved for summary judgment on the issue of liability. On May 30, 2024, the trial court granted the State summary judgment on the issue of liability on the seven violations set forth in the State's complaint.

{¶10} On October 21, 2024, the parties filed several stipulations into which they entered, including:

      a. No cattle remain on Hastings Farm;

b. Defendants have sold all milking parlor equipment that was previously used at Hastings Farm;

c. All animal feed/silage storage piles have been removed from the Farm;

d. There are no manure inputs to the concrete manure storage structure;

e. There are no manure inputs to the large earthen manure storage structure;

f. As of August 2024, neither the Ohio Department of Agriculture nor [Hastings] have immediate concerns about the structural integrity of the large earthen manure storage structure . . . .

{¶11} Thereafter, the matter proceeded to trial on the issues of injunctive relief and civil penalties. In a judgment entry dated November 27, 2024, the court denied further injunctive relief and imposed a penalty on Hastings of $30,000, representing $5,000 per day for each of the six days following the initial breach. The State appeals this judgment and raises two assigned errors for our review.

{¶12} In its first assigned error, the State contends:

{¶13} "The trial court erred as a matter of law when it failed to order injunctive relief even though it had found that the statutory requirements for the injunction had been met."

{¶14} The State maintains that the trial court applied the incorrect legal standard when denying its requests for injunctive relief. Because the State alleges error with respect to the application of the law, we review this assigned error de novo. *Schutz v. Cuyahoga Cty. Bd. of Revision*, 2018-Ohio-1588, ¶ 6.

{¶15} The State sought injunctive relief pursuant to R.C. 939.07(B) and 6111.07(B). R.C. 939.07(B) provides, "The attorney general, upon the written request of

the director [of agriculture], shall bring an action for an injunction in any court of competent jurisdiction against a person violating or threatening to violate rules adopted under division (E) of section 939.02 of the Revised Code or an order issued under division (A)(4) of this section." Likewise, R.C. 6111.07(B) provides, in relevant part, "The attorney general, upon written request of the director [of environmental protection], shall bring an action for an injunction against any person violating or threatening to violate this chapter or violating or threatening to violate any order, rule, or condition of a permit issued or adopted by the director pursuant to this chapter."

{¶16} Here, the State made two specific requests for injunctive relief. First, because Hastings had ceased farm operations, the State requested the court to order Hastings to comply with the best management practices for closure of the large manure storage pit. Second, the State requested the court to order Hastings to remove contaminated sediment from the Murphy's ponds through dredging.

{¶17} In denying the requested injunctive relief, with respect to closure of the large manure storage pit, the trial court noted that the evidence established that Hastings had removed approximately 90 percent of the manure from the pit. The court referenced that Hastings had exhausted their remaining budget for further efforts at the site and intended to sell the farm after resolution of the case. The court concluded that, although the farm was "closed," there was no indication as to how long the farm would remain closed following a sale. Further, the court reasoned that, pursuant to the parties' experts' testimony, so long as no new manure was added to the large manure storage pit, it would be operationally safe for at least two years, and it did not pose any realistic pollution

threats at that time. Therefore, the court declined the State's request for injunctive relief on this issue.

{¶18} The court then addressed the State's request for a requirement that Hastings dredge the Murphy's ponds. The court, citing *Hritz v United Steel Workers of Am., AFL-CIO*, 2003-Ohio-5284 (12th Dist.), determined that it was impossible for it to conclude that an order to dredge the ponds was an "equitable" result because the State had failed to provide a cost and benefit analysis. *See id.* at ¶ 41, quoting *Perkins v. Quaker City*, 165 Ohio St. 120, 125 (1956).

{¶19} The State contends that it was entitled to injunctive relief as a matter of law, and actions brought under R.C. 939.07(B) and R.C. 6111.07(B) are not subject to ordinary equitable principles applicable to private injunction actions. In support, the State relies on *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51 (1978).

{¶20} *Ackerman* pertained to an action brought by the director of health pursuant to R.C. 3721.08 to enjoin a facility from operating a nursing home. R.C. 3721.08 provides that the director may petition a court for an order enjoining a person from operating a nursing home under certain conditions. *Ackerman* at 55. Because the prerequisites for "such injunctive relief" in that case were met, the Ohio Supreme Court reasoned that, unless equitable defenses or maxims were also to be considered, then the injunction should be granted. In addressing this issue, the Supreme Court stated:

> It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction "need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law . . . ." *Stephan v. Daniels*, [27 Ohio St. 527, 536 (1875)]. ([*See also*] *State v. Alexander Brothers, Inc.*[, 43 Ohio App.2d 154 (5th Dist. 1974)]; 29 Ohio Jurisprudence 2d, 176,

Case No. 2024-G-0052

Injunctions, Section 13; and 42 American Jurisprudence 2d 776, Injunctions, Section 38, for further support of the propositions that the traditional concepts for the issuance of equity injunctions do not apply in statutory injunction actions.)

Moreover, it is the majority rule in federal courts and the law in a growing number of state jurisdictions that, where an injunction is authorized by a statute designed to provide a governmental agent with the means to enforce public policy, "no balancing of equities is necessary," *Brown v. Hecht Co.*[, 137 F.2d 689, 692 (D.C.Cir. 1943)]; *State v. O.K. Transfer Company*[, 215 Or. 8, 15 (1958)]; and "[i]t is enough if the statutory conditions are made to appear." *[O.K. Transfer Company* at 15-16]. *See also*[] *United States v. San Francisco*[, 310 U.S. 16, 30 (1940)]; *Conway v. State Board of Health*[, 252 Miss. 315 (1965)]; *Nevada Real Estate Comm. v. Ressel*[, 72 Nev. 79 (1956)]; *Arizona State Board of Dental Examiners v. Hyder*[, 114 Ariz. 544 (1977)].

*Ackerman* at 56-57. *See also State ex rel. Pizza v. Rezcallah,* 84 Ohio St.3d 116, 123 (1998) (recognizing that "[t]he General Assembly has provided that if a nuisance, as defined in R.C. 3719.10 or 3767.01(C), was admitted or established under R.C. 3767.11 or 3767.03, the courts were statutorily required to enter a judgment entry, including an order of abatement and a permanent injunction against the owners irrespective of their degree of culpability in the creation or perpetuation of the nuisance[,]" but holding that a mandatory closure order would be unconstitutional as applied).

{¶21} In their answer brief, Hastings maintain that *Ackerman* is not applicable to actions for injunctive relief brought under R.C. 939.07(B) and 6111.07(B) because these statutes do not specify a certain type of injunctive relief that should be granted upon proof of specific conditions.

{¶22} However, in addressing an injunction action brought under R.C. 6111.07(B), the Seventh District applied *Ackerman*, holding:

> In this case, the statute requires that the State prove that someone is "violating or threatening to violate this chapter or violating or threatening to violate any order, rule, or condition of a permit issued or adopted by the director pursuant to this chapter." R.C. 6111.07(B). Once it does so, the trial court has the authority to issue an injunction. This is a statute designed to provide a governmental agent with the means to enforce a public policy. The legislature gave the trial court the ability to issue a statutory injunction without a demonstration of the common-law requirement of irreparable harm. Accordingly, Appellants' argument that equitable principles must apply is meritless.

*State v. Tri-State Group, Inc.*, 2004-Ohio-4441, ¶ 42 (7th Dist.).

**{¶23}** Here, R.C. 6111.07(B) authorized injunctive relief on two violations in this case. R.C. 939.07(B), which contains relevant language substantially similar to that of R.C. 6111.07(B), authorized injunctive relief on five violations in this case. Although both statutes authorize injunctive relief upon proof of certain violations, neither statute specifies a certain type of injunctive relief that should be granted.

**{¶24}** Thus, pursuant to the statutes, the State was required only to demonstrate a violation of the relevant chapters or rules to obtain "an injunction." However, it does not follow that the trial court was required to order the precise injunctive relief the State requested, as the statutes at issue do not specify the nature of the injunctive relief to be imposed. Thus, "[t]he law does provide for the State to receive injunctive relief. However, the law does not require the trial court to grant every type of relief that the State requests. The court should grant the relief which is reasonable under the circumstances." *State ex rel. Petro v. RSV, Inc.*, 2006-Ohio-376, ¶ 37 (7th Dist.), citing *Alexander Bros., Inc.*, 43 Ohio App.2d at 155 ("injunctive relief should have been granted upon such reasonable terms as might be ordered by the trial court").

{¶25} Applying these principles to the trial court's judgment, first, with respect to the State's request that the court order implementation of the best practice methods for complete closure of the large manure storage pit, the court did not improperly apply equitable principles in denying the request. Instead, given the uncertainty as to whether the farm would resume operations after sale and given the evidence that the pit would not pose a danger of overfilling by rainwater for at least two years, it determined that complete closure requirements were not warranted. We discern no error of law in the court's denial of this request.

{¶26} Next, with respect to the State's request that the trial court order dredging of the Murphy's ponds, the court stated:

> No evidence was presented as to the necessary scope of this dredging work, or, most importantly, the cost. Nor was there any evidence presented to the Court of any alternative methods to improve the water quality of these ponds, such as aeration. Moreover, the evidence suggests real improvement in the water quality of such ponds has already been achieved in the 3 and 1/2 years since the spill; indeed, the ponds appear to have acceptable water quality at this time.
>
> While this Court is sympathetic to the plight of the Murphys and acknowledges the ponds may not be as pristine today as they may have been prior to the spill, the Murphys could always have pursued civil remedies against the Hastings wherein these remedial issues, or damages, could have been more thoroughly investigated and litigated. Even in this case, the demand for dredging of these ponds did not appear among the State's requests until over three years after the May[ ]2020 breach, in its 6/20/23 2nd Amended Complaint. Even the State appears to have paid scant attention to these ponds for years after the spill as the evidence indicates a lengthy period of time passed before further investigation.
>
> Injunctive relief is an "[']extraordinary remedy equitable in nature, and . . . its issuance may not be demanded as a matter of strict right. An application for an injunction is addressed to the sound discretion of the court, . . . and its allowance is a

matter of grace.'" *Hritz*[, 2003-Ohio-5284, at ¶ 41 (12th Dist.)], quoting *Perkins* [165 Ohio St. at 125]. Whether it will be granted depends on the character of the case, the peculiar facts involved, and other factors, among which are those relating to public policy and convenience. *Id.* Injunctive relief may be refused if granting it would be inequitable or unjust.

In this case, where no cost/benefit analysis for the proposed injunctive relief—namely, "dredging" these two ponds—has been presented it is impossible for this Court to conclude an order to dredge these ponds is an equitable result. Recognizing the significant expenditures the Defendants have already incurred in this matter, including renting and operating pumps to aerate the creek and ponds immediately following the spill, and recognizing also that the water quality in these ponds has recovered significantly, ordering this most drastic of remedies without any knowledge of its costs and practical difficulties is not equitable. If the State had serious concerns about the release of "toxins" from these ponds, it is hard to explain the significant delay in pursuing this particular remedy.

{¶27} Based on this analysis, to the extent that the trial court erred in applying equitable principles to the State's request for a dredging order, it did so with respect to the lack of evidence as to the scope, costs, and benefits of such an order. However, the lack of this evidence would have also prevented the trial court from properly determining whether dredging was reasonable under the circumstances. *Compare Tri-State Group, Inc.*, 2004-Ohio-4441, at ¶ 43 (7th Dist.) (trial court did not abuse its discretion with respect to the scope of injunctive relief where "[t]he evidence at trial . . . establishe[d] that the only way to ensure both full compliance with the permits and that there is no environmental damage from the site is to have the types of requirements contained in the trial court's judgment entry"), *with State ex rel. Williams v. Skinner*, 1979 WL 208823, *2 (1st Dist. Aug. 1, 1979) (pursuant to *Ackerman*, "the Attorney General is entitled to an injunction sufficient to provide him with the means necessary for the enforcement of public policy as expressed by the General Assembly in the several statutes involved in this type

of case," but mandatory clean-up injunction was not warranted by the facts). Accordingly, insofar as the trial court erred as a matter of law in applying equitable principles to the State's request for a dredging order, the State was not prejudiced by the trial court's error, as it did not affect the outcome of the case. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

{¶28} Therefore, the State's first assigned error lacks merit.

{¶29} In its second assigned error, the State maintains:

{¶30} "The trial court erred as a matter of law by failing to mandate civil penalties for each day of each violation."

{¶31} In the State's second assigned error, it again alleges error with respect to the trial court's application of the relevant law. Accordingly, we review this assigned error de novo. *Schutz*, 2018-Ohio-1588, at ¶ 6.

{¶32} Civil penalties are authorized in this case pursuant to R.C. 939.07(C)(1) and R.C. 6111.09(A). R.C. 939.07(C)(1) permits the director of the ODA to request the Attorney General to seek civil penalties for violations of the rules promulgated under that chapter. R.C. 939.07(C)(2) provides, "The civil penalty for which an action may be brought under division (C)(1) of this section shall not exceed ten thousand dollars per violation. Each day that a violation continues constitutes a separate violation."

{¶33} R.C. 6111.09(A) provides that "any person who violates section 6111.07 of the Revised Code *shall pay* a civil penalty of not more than ten thousand dollars per day of violation." (Emphasis added.) R.C. 6111.07(A) provides that "[e]ach day of violation is a separate offense."

Case No. 2024-G-0052

**{¶34}** Generally, "[a]ssessing an environmental civil penalty lies within the trial court's discretion." *State ex rel. DeWine v. Deer Lake Mobile Park*, 2015-Ohio-1060, ¶ 41 (11th Dist.), citing *State ex rel. Ohio AG v. Shelly Holding Co.*, 2012-Ohio-5700, ¶ 23, citing *State ex rel. Brown v. Dayton Malleable*, 1 Ohio St.3d 151, 157-158 (1982). However, as set forth above, the State does not argue that the trial court abused its discretion in ordering the civil penalty in this case. Instead, it maintains that the trial court erred as a matter of law in failing to properly apply the statutory framework. We limit our discussion accordingly.

**{¶35}** In the trial court's judgment entry, it stated:

> Lastly, the State seeks the civil penalties set forth above. While the Court recognizes the regulations provide for daily penalties up to $10,000 for violations, at the end of the day, in this case there was arguably only one major polluting event. It occurred over just a few days in late May and early June[ ] 2020. It was ugly, messy, and dangerous, but, fortunately, this major event was never repeated. Certainly the State expressed concerns to this Court at certain subsequent times over that a breach of the embankment could be repeated but the Hastings did much to prevent a reoccurrence. And, in this Court's view, the other water and waste violations discovered by the State on the farm after the initial event were relatively minor; none resulted in significant pollution in any event. The Defendants promptly remedied some of those violations and eventually all of them, at significant cost, in any event.
>
> Therefore, the Court concludes that under these circumstances, the State is not entitled to a daily penalty sum commencing on the date of the initial breach up until today, especially when the docket also reflects the State itself initiated and/or joined with the Defendants in many requests for more time for the Hastings to resolve the various issues and concerns, or for trial preparation extensions. While the Court acknowledges the State's patience, perhaps due to a desire to permit this farm to survive this crisis, it would be unfair to attribute all the blame for delay upon the Hastings.

{¶36} The court then proceeded to a discussion of the factors set forth in *Dayton Malleable* for assessment of a civil penalty. Thereafter, the court imposed a civil penalty on Hastings in the amount of "$30,000 which is intended to represent $5,000/ day of the six days following the initial breach."

{¶37} On appeal, the State maintains that the trial court was required by law to assess the civil penalty by assigning a particular penalty amount for each separate violation and determining each day the violation continued. The State maintains that this method of calculation is required by the provisions of R.C. 939.07, R.C. 6111.07(A), and R.C. 6111.09(A).

{¶38} However, those statutes do not require the trial court to individually assess penalties for multiple violations. Instead, those provisions set forth that each day a violation continues constitutes a separate offense and set the maximum amount of civil penalties a trial court may assess as "up to" or "not more than" ten thousand dollars per day of violation. The court did impose a civil penalty, as permitted by R.C. 939.07(C) for violations of Chapter 939, and as required by R.C. 6111.09(A) for violations of R.C. 6111.07, and there is no dispute that the penalty did not exceed the statutory maximum of $10,000 per day that the violations continued. "As long as the amount assessed is less than the statutory maximum, it is within the trial court's discretion to fix that amount." *Deer Lake Mobile Park*, 2015-Ohio-1060, at ¶ 41 (11th Dist.), citing *Dayton Malleable*, 1 Ohio St.3d at 157.

{¶39} Accordingly, we discern no error "of law" in the trial court's assessment of the civil penalty. Therefore, the State's second assigned error lacks merit.

{¶40} The judgment is affirmed.


MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE EUGENE A. LUCCI

JUDGE MATT LYNCH,
concurs

JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-G-0052